**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSE AVILA,
*on behalf of himself, FLSA Collective Plaintiffs and the Class,*

Plaintiff,

v.

MCSS REST. CORP.
d/b/a CROSS BAY DINER
150-03 REST. CORP.
d/b/a KANDELA
156-40 REST. CORP.
d/b/a SOUVLAKI SPOT
MICHAEL SIDERAKIS,

Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, JOSE AVILA (herein, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, MCSS REST CORP d/b/a CROSS BAY DINER, 150-03 REST CORP d/b/a KANDELA, 156-40 REST CORP d/b/a SOUVLAKI SPOT ("Corporate Defendants"), and MICHAEL SIDERAKIS ("Individual Defendant") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages due to time-shaving; (2) unpaid wages due to invalid tip credit;

(3) unpaid wages due to improper meal credit deductions; (4) liquidated damages; and (5) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time-shaving; (2) unpaid wages due to invalid tip credit; (3) unpaid wages due to improper meal credit deductions; (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

**PARTIES**

5. Plaintiff, JOSE AVILA, is a resident of New York, New York.

6. Corporate Defendant MCSS REST CORP d/b/a CROSS BAY DINER is a domestic business corporation with a principal place of business located at 160-31 Cross Bay Boulevard, Howard Beach, NY 11414, and the address of service being 160-31 Cross Bay Boulevard, Howard Beach, NY 11414.

7. Corporate Defendant 150-03 REST CORP d/b/a KANDELA is a domestic business corporation with a principal place of business located at 150-03 Cross Bay Boulevard, Ozone Park, NY 11417, and the address of service being 160-31 Cross Bay Boulevard, Howard Beach, NY 11414.

8. Corporate Defendant 156-40 REST CORP d/b/a SOUVLAKI SPOT is a domestic business corporation with a principal place of business located at 156-40 Cross Bay Boulevard,

Howard Beach, NY 11414, and the address of service being 160-31 Cross Bay Boulevard, Howard Beach, NY 11414.

9. Individual Defendant MICHAEL SIDERAKIS is the owner and principal of the Corporate Defendants. MICHAEL SIDERAKIS exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. MICHAEL SIDERAKIS had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiff, FLSA Collective Plaintiffs and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class Members at Defendants' restaurants.

10. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

11. Defendant MICHAEL SIDERAKIS, owns and operates Corporate Defendants, located at three (3) locations in New York City:

a. Cross Bay Diner – 160-31 Cross Bay Boulevard, Howard Beach, NY 11414;
b. Kandela – 150-03 Cross Bay Boulevard, Ozone Park, NY 11417;
c. Souvlaki Spot – 156-40 Cross Bay Boulevard, Howard Beach, NY 11414.

(Collectively, the "Restaurants").

12. The Restaurants are operated as a single integrated enterprise under common control of Individual Defendant MICHAEL SIDERAKIS. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

a) Individual Defendant MICHAEL SIDERAKIS is listed as the principal on the liquor license for the Restaurants. *See* **Exhibit A**, NYS LAMP Records for Each of Defendants' Locations.

b) Pursuant to the New York State Liquor Authority Handbook for Retail Liquor Licensees, New York State liquor license holders must (1) prevent sales of liquor to minors, (2) prevent disorder, (3) confine service and consumption of liquor to the licensed area, (4) prevent sales of liquor to visibly intoxicated persons, (5) prohibit their businesses from offering unlimited drink specials, (6) ensure licensed restaurants have suitable kitchen facilities to prepare and serve a full menu whenever their business is open, (7) prevent individuals from appearing nude or partially nude on the licensed premises, (8) prevent the premixing of liquor, (9) prevent the refilling of liquor, (10) prevent possession of untaxed cigarettes & tobacco products, (11) prevent contamination of bottles, (12) maintain adequate books and records of all transactions involving the licensed business, (13) ensure proper identification of all beer taps, (14) ensure compliance with all stipulations and conditions of the liquor license agreement, (15) comply with all state and local laws and regulations governing the operations of the licensed business. *See* **Exhibit B** (New York State Liquor Authority Handbook for Retail Liquor Licensees).

c) The Restaurants all have the address, 160-31 Cross Bay Boulevard, Howard Beach, NY 11414, listed as their address of service on the Department of State Division of Corporations. *See* **Exhibit C**, NYS Corporate Records for Each Corporate Defendant.

d) The Restaurants share employees and supplies as necessary.

e) Individual Defendant MICHAEL SIDERAKIS directly managed each of the restaurants. He oversaw hiring and firing of each employee, set pay rates, and directly supervised and directed employees at each of the restaurants.

13. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

14. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

15. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, servers, runners, bussers, and countermen, among others) employed by Defendants on or after the date that is six (6) years before filing of the Complaint (herein, "FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime wages, due to time shaving. Further, with respect to tipped employees, Defendants were not entitled to take any tip credits under the FLSA, because they failed to satisfy all statutory requirements for taking a tip credit.

17. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to

Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

19. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, servers, runners, bussers, and countermen, among others) employed by Defendants at all locations, on or after the date that is six years before the filing of the Complaint (the "Class Period").

20. All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

22. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, including: (i) failing to pay all earned wages including overtime due

to a policy of time shaving, (ii) failing to provide wage statements in compliance with the NYLL, and (iii) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the NYLL. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

23. Furthermore, Plaintiff and the Tipped Subclass also suffered as a result of Defendants' failure to pay them the proper minimum wage. Plaintiff and Tipped Subclass Members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL. In violation of the NYLL, Defendants (i) failed to properly provide tip credit notice, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for more than thirty (30) minutes of uninterrupted and continuous non-tipped work, (iv) failed to properly provide tip credit notice at hiring and annually thereafter, and (v) failed to provide a proper wage statement with every payment of wages informing Plaintiff and Tipped Subclass Members of the amount of tip credit deducted for each payment period.

24. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy–particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class Members for their work;

d. Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e. Whether Defendants paid Plaintiff and Class Members the proper compensation for all the hours worked under the NYLL;

f. Whether Defendants properly compensated Plaintiff and Tipped Subclass Members the proper minimum wage under the NYLL;

g. Whether Defendants properly provided written notice to all tipped employees, in their native language, regarding Defendants' tip credit;

h. Whether Defendants caused tip employees to engage in non-tipped duties exceeding 20% or 2 hours of their work shift;

i. Whether Defendants paid Plaintiff and Class Members below the applicable New York City minimum wage;

j. Whether Defendants took a meal credit out of Plaintiff's and Class Members' wages.

k. Whether Defendants took a tip credit from Plaintiff's and Tipped Subclass Members' wages.

l. Whether Defendants caused tip employees to engage in non-tipped duties exceeding thirty (30) minutes continuously;

m. Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

n. Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws.

**STATEMENT OF FACTS**

28. In or around November 2025, Plaintiff JOSE AVILA was hired by Defendants to work as a server and counterman for Defendants at their CROSS BAY DINER restaurant,

located at 160-31 Cross Bay Boulevard, Howard Beach, NY 11414. Plaintiff was employed by Defendants until or around March 2026.

29. Throughout his employment, Plaintiff typically worked five (5) days per week for approximately eight (8) hours on Tuesdays, Thursdays, and Sundays, from 4:00 p.m. until 12:00 a.m., seven (7) hours on Wednesdays, from 3:00 p.m. until 10:00 p.m., and nine (9) hours on Saturdays, from 5:00 p.m. until 2:00 a.m. In total, Plaintiff was scheduled for forty (40) hours a week. However, Plaintiff always worked more than forty (40) hours, as described below. FLSA Collective Plaintiffs and Class Members similarly worked weeks of more than forty (40) hours.

30. Throughout his employment, Plaintiff was assigned to work two different roles. One as a server, for which he was paid $11.35 per hour, plus tips. And a second as a counterman, for which he was paid $14.00 per hour, plus tips. FLSA Collective Plaintiffs and Class Members were similarly assigned to work in both positions and were paid at similar rates.

31. On days Plaintiff was supposed to be a server, Plaintiff was required to do the same counterman duties anyway while being paid tip credit minimum wage as a server. FLSA Collective Plaintiffs and Tipped Subclass Members all had to do excessive untipped side work while being paid at tip credit minimum wage.

***<u>Plaintiff's and Class Members' Timeshaving Claims</u>***

32. Plaintiff and Class Members were not paid all of their wages, for all hours worked, due to Defendants' policy of timeshaving. Every day, Plaintiff was required to arrive and begin work ten (10) minutes early, but would not be allowed to clock in until the start time of his scheduled shift. This timeshaving violation resulted in fifty (50) minutes of weekly unpaid wages.

33. FLSA Collective Plaintiffs and Class Members were similarly required to arrive early and start working and were prevented from clocking in until their scheduled start time.

34. Defendants knowingly and willingly operated their business with a policy of not paying for all hours worked to Plaintiff and Class Members, in violation of the FLSA.

***<u>Plaintiff's and Class Members' Tip Credit Claims</u>***

35. At all times, Defendants deducted a tip credit from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members. However, that tip credit was invalid as Defendants were not entitled to claim any tip credit allowances under the FLSA or the NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credits for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty (20) percent of the total hours worked each workweek; and (iii) failed to accurately keep track of daily tips earned and maintain records thereof.

36. Throughout Plaintiff's employment, Defendants paid invalid "tip credit" minimum wage to Plaintiff and Class Members by paying them at the tip-credit rate for hours spent performing non-tipped duties that regularly exceeded both twenty (20) percent of total hours worked each workweek and thirty (30) continuous minutes. Defendants required Plaintiff to spend substantial portions of his shifts (up to 4 hours some days) performing duties including cleaning the restaurant, cleaning the booths, cleaning the chairs, and cleaning the kitchen fridges. Despite these extensive non-tipped duties, Defendants continued to claim a tip credit for all hours worked. Plaintiff and Class Members suffered from substantial unpaid minimum wages each week due to Defendants' violation.

37. Throughout his employment, Plaintiff and Class Members did not receive wage statements that were in compliance with the NYLL. Plaintiff and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

38. Defendants knowingly and willingly operated their business with a policy of not paying the New York State minimum wage for all hours worked to Plaintiff, and Class Members, due to an invalid tip credit, in violation of the FLSA and the NYLL.

***Plaintiff's and Class Members' Invalid Meal Credit Claims***

39. Throughout his employment, Defendants improperly deducted a meal credit of approximately $4.05 from Plaintiff's wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals' "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four food groups, whether employees consumed the credited meals or not, and whether employees consumed the credited meals during a reasonable meal period or not.

40. Defendants' meal credit deductions were improper because (1) they did not provide a proper meal which includes at least one of the types of food from all four of the following groups: (i) fruits or vegetables; (ii) grains or potatoes; (iii) eggs, meat, fish, poultry, dairy, or legumes; and (iv) tea, coffee, milk, or juice; and (2) all the meals offered to Plaintiffs were leftovers and not edible. As a result, Defendants claimed improper meal credits from Plaintiffs every day. Similarly, FLSA Collective Plaintiffs and Class Members were improperly deducted for meal credits.

***Plaintiff's and Class Members' WTPA Claims***

41. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

42. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on

Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

43. New York Courts continue to find sufficient standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

44. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual tips that they earned by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of tips Plaintiff and Class Members actually earned, as required by law, Defendants would have had to either (a) increase the wages to correspond to the tips actually earned or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the tips the employee actually earned.

45. By failing to report all of Plaintiff's and Class Members' tips, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an

employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

46. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' improper tip credit and policy of time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants.

47. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

48. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM
## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

49. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

50. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

51. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

52. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

53. At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime wages, to Plaintiff and FLSA Collective Plaintiffs, due to a policy of timeshaving.

54. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

55. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages when Defendants knew or should have known such was due.

56. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

57. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

58. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid

wages due to time-shaving, plus an equal amount as liquidated damages.

59. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**

60. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

61. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

62. At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Tipped Subclass members the proper minimum wage due to an invalid tip credit in direct violation of the NYLL.

63. At all relevant times, Defendants engaged in a policy and practice of paying Plaintiff and Class members below the applicable New York City minimum wage of $16.50 per hour (2025) and $17.00 per hour (2026) for hours worked performing non-tipped counterman duties, in direct violation of NYLL § 652.

64. Defendants failed to properly notify Plaintiff and the Tipped Subclass of their tips, in direct violation of the NYLL.

65. Defendants willfully violated Plaintiff's and Class members' rights by improperly deducting meal credits from Plaintiff and Class members regardless of whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and Class members consumed the meals in question.

66. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

67. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

68. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants, unpaid wages due to an invalid tip credit, unpaid wages due to time shaving, unpaid wages due to improperly deducted meal credits, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award, pursuant to the FLSA and the NYLL, of unpaid wages due to timeshaving;

d. An award, pursuant to the FLSA and the NYLL, of unpaid wages due to an invalid tip credit;

e. An award, pursuant to the FLSA and the NYLL, of unpaid wages due to an invalid meal credit;

f. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g. An award of all applicable damages due to Defendants' retaliatory conduct under the FLSA and NYLL;

h. Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

i. Designation of this action as a class action pursuant to F.R.C.P. 23;

j. Designation of Plaintiff as Representatives of the Class; and

k. Such other and further relief as this Court deems just and proper.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 18, 2026

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiff and the Class*